IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**ADAM COREY WILLIAMS**

          Plaintiff,

v.                                       No. 6:19-CV-00069-MO

**SERGEANT MICHAEL BASKETT,**                OPINION AND ORDER

          Defendant.

**MOSMAN, J.,**

      Plaintiff Adam Corey Williams brings this section 1983 case against Defendant Sergeant Michael Baskett. Before me is Sergeant Baskett's Motion for Summary Judgment [ECF 55] and Williams's Memorandum in Opposition for Summary Judgment [ECF 81], which I will construe as a cross-motion for summary judgment. For the reasons discussed below, I GRANT Sergeant Baskett's motion and DENY Williams's cross-motion.

## BACKGROUND

      This case stems from Mr. Williams's arrest in Salem, Oregon on January 17, 2017. The main events that took place are largely undisputed. Of course, for purposes of summary judgment disputed facts are viewed in the light most favorable to Mr. Williams. On January 17, 2017, Keizer Police Officer Martin Powell informed Sergeant Baskett that he had probable cause to arrest the male driver of a black Mercedes with the license plate 547JBP. Baskett Decl. [ECF

56] ⁋ 2. Officer Powell told Sergeant Baskett that "it was highly likely that [Mr. Williams] would attempt to elude police in his vehicle." *Id.* ⁋ 9. Sergeant Baskett also reviewed a Be On the Look Out Bulletin ("BOLO"), sent out on January 16, 2017, that "specifically identified [Mr. Williams] as a wanted suspect for the crimes of forgery and stealing a motor vehicle." *Id.* ⁋ 4. The BOLO also stated that Mr. Williams "is commonly in possession of firearms and was seen with a real handgun about a week ago in which the tip ha[d] been painted orange to make it look like a toy." *Id.* ⁋ 5. Additionally, Sergeant Baskett "learned that [Mr. Williams] had at least one 'felony caution warrant' for his arrest." *Id.* ⁋ 6. The "caution" was "based on previous incidents where Plaintiff was arrested for the crimes of Felon in Possession of a Weapon, Resisting Arrest and Using or Possessing a Loaded Firearm in a Vehicle." *Id.* ⁋ 7. Although Mr. Williams disputes the validity of these assertions, he does not dispute that they were conveyed to Sergeant Baskett or that Sergeant Baskett believed them to be true. *See* Pl.'s Resp. [ECF 81] at 2.

At roughly 9:44 p.m. on January 17, 2017, while on duty, in uniform, and operating his fully marked patrol vehicle, Sergeant Baskett saw a black Mercedes driving in a residential neighborhood in Salem, Oregon. Baskett Decl. [ECF 56] ⁋⁋ 10–12. He confirmed that the license plate matched the one given to him by Officer Powell.[1] *Id.* ⁋ 12. Sergeant Baskett observed Mr. Williams driving towards a traffic circle. *Id.* ⁋ 13. The parties disagree whether Mr. Williams stopped at the posted stop sign before continuing around the circle. *Compare id.* ⁋ 14 *with* Pl.'s Resp. [ECF 81] at 6–7.

Sergeant Baskett then "decided to drive the wrong way around the traffic circle, in order to prevent [Mr. Williams] from attempting to elude arrest." Baskett Decl. [ECF 56] ⁋ 16. As Mr. Williams slowed his vehicle, he contends that Sergeant Baskett collided with the front quarter-

---

[1] The vehicle belonged to Mr. Williams's friend, Nichole McLean, but on January 17, 2017, was being driven by Mr. Williams alone. Am. Compl. [ECF 33] at 4 n.3. For clarity, I refer to it as Mr. Williams's vehicle.

panel of the driver's side of Mr. Williams's vehicle. Am. Compl. [ECF 33] at 3. After Mr. Williams's vehicle stopped, Sergeant Baskett "began to push [Mr. Williams's car backward while the transmission was in 'Drive' mode," causing the transmission to lock. *Id.* Sergeant Baskett believed that Mr. Williams had begun "to try and maneuver the gear shift of his vehicle." Baskett Decl. [ECF 56] ⁋ 19. At that point, Officer Thomas Ammon, another patrol officer, was also on the scene and parked behind Mr. Williams in the traffic circle. *Id.* ⁋ 21.

Sergeant Baskett then quickly exited his police vehicle and pointed his firearm at Mr. Williams while giving him verbal warnings to show his hands and not reach for anything. *Id.* ⁋⁋ 20, 22. Mr. Williams opened his door and asked what was going on and Sergeant Baskett informed him he was under arrest. *Id.* ⁋⁋ 23–24. Thereafter, Sergeant Baskett declares Mr. Williams "eventually responded that he would comply with [his] commands." *Id.* ⁋ 25. Mr. Williams then asked Sergeant Baskett to get the warrant and shut his vehicle door. *Id.* ⁋ 26; Am. Compl. [ECF 33] at 4. Sergeant Baskett "quickly approached [the] vehicle with [his] gun drawn," and after confirming Mr. Williams was not reaching for anything, holstered his weapon. Baskett Decl. [ECF 56] ⁋⁋ 27–28. At this point, Mr. Williams asserts that he stopped and was cooperating. Am. Compl. [ECF 33] at 3. However, Sergeant Baskett "believed that [he] needed to have physical control of [Mr. Williams], to avoid harm to [himself] and Officer Ammon." Baskett Decl. [ECF 56] ⁋ 30.

The next events occurred nearly simultaneously. *See* Williams Decl. [ECF 82] ⁋⁋ 11–12. Using his baton, Sergeant Baskett shattered Mr. Williams's driver-side window. Baskett Decl. [ECF 56] ⁋ 30; Am. Compl. [ECF 33] at 4. This action caused glass to fly into Mr. Williams's face and onto his body. Am. Compl. [ECF 33] at 4–5. Then, while Mr. Williams's hands were still in plain sight, Sergeant Baskett shot Mr. Williams in the chest with a taser dart. *Id.* at 5.

While Mr. Williams was still being electrocuted, Sergeant Baskett then "took a second taser from his utility belt and applied it to [Mr. Williams's] left thigh." *Id.* Sergeant Baskett believed Mr. Williams had a firearm and used the taser "in an attempt to render [him] incapable of accessing and using that firearm." Baskett Decl. [ECF 56] ⁋ 31. The tasers incapacitated Mr. Williams. *Id.* ⁋ 32; Am. Compl. [ECF 33] at 5.

Sergeant Baskett and Officer Ammon then removed Mr. Williams from his vehicle through the shattered window. Am. Compl. [ECF 33] at 6; Baskett Decl. [ECF 56] ⁋ 32. Once he was through the window, Mr. Williams made impact with the pavement. Mr. Williams states that he was "body-slammed" by the officers. Am. Compl. [ECF 33] at 6. Mr. Williams was taken to Marion County Jail and then released less than an hour after he was booked. Am. Compl. [ECF 33] at 7. All charges were later dismissed. *Id.*

Mr. Williams alleges that Sergeant Baskett violated his Fourth, Eighth, and Fourteenth Amendment rights based on the use of force during his arrest. He brings five claims based on each instance of alleged excessive force: (1) stop of his vehicle; (2) shattering of the driver's side window of his vehicle; (3) first use of taser on his chest; (4) second use of taser on his leg; and (5) his forced removal from his vehicle. Am. Compl. [ECF 33] at 2–6.

Sergeant Baskett moves for summary judgment on all five of Mr. Williams's claims. In Mr. Williams's response, he indicates he is cross moving for summary judgment on his first claim. Pl.'s Resp. [ECF 81] at 16. Additionally, after Defendant moved for summary judgment, Mr. Williams's filed a second amended complaint including three additional claims against three new defendants, Officer Martin Powell, the City of Salem Police Department, and the City of Keizer Police Department.[2] [ECF 67]. These new claims are not before me.

## LEGAL STANDARD

---

[2] To date, Mr. Williams has failed to serve the newly named Defendants.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005).

The moving party bears the initial burden of informing the court of the basis of its motion and providing evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the nonmoving party must "present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## DISCUSSION

Mr. Williams's claims allege violations of his Fourth, Eighth, and Fourteenth Amendment rights. I first address the alleged Eighth and Fourteenth Amendment violations and then address the alleged Fourth Amendment violations.

## I.    Eighth Amendment

"Eighth Amendment protections apply only once a prisoner has been convicted of a crime." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016). Mr. Williams was not incarcerated at the time of his arrest. Accordingly, he has no possible Eighth Amendment claims stemming from this incident and I GRANT summary judgment for Defendant on these claims.

## II.    Fourteenth Amendment

For excessive force claims, the Fourth Amendment, not the Fourteenth Amendment, provides the proper framework for my analysis. *Graham v. Connor*, 490 U.S. 386, 395 (1980). I thus need not independently analyze Mr. Williams's claims under the Fourteenth Amendment.

## III.    Fourth Amendment

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Id.* at 396 (internal quotation marks and citations omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Those circumstances include 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)); *see also Graham*, 490 U.S. at 396. I must also examine any additional factors that are relevant to the particular case before me. *Marquez v. City of Phx.*, 693 F.3d 1167, 1174–75 (9th Cir. 2012). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

### A.    Intrusion on Mr. Williams's Fourth Amendment Interests

First, I must consider the amount of force used and the extent to which it intruded on Mr. Williams's Fourth Amendment Rights. *Graham*, 490 U.S. 386, 394 (1989); *see also Marquez*, 693 F.3d at 1174. Mr. Williams claims that Sergeant Baskett's stop of his vehicle, shattering of the driver's side window of his vehicle, first use of a taser on his chest, second use of a taser on his leg; and forced removal of him from his vehicle were all instances of excessive force. These instances of force are undisputed, except for the removal of Mr. Williams from his vehicle. Sergeant Baskett disagrees with Mr. Williams's characterization that the officers "body-slammed" him after removing him from the car, stating that the officers used the amount of force that was reasonably necessary in the circumstances. For purposes of resolving this motion, I presume that Mr. Williams was body-slammed.

Mr. Williams attests that the first application of the taser incapacitated him and the second application made it feel like he "was getting double-tased with two separate Tasers." Williams. Decl. [ECF 82] ⌶ 13. Mr. Williams describes the feeling of the first electrocution as "horrible" and the second as "indescribably worse." *Id.* When the tasing stopped, Mr. Williams declares that he "couldn't yet move" or "speak with any sort of audible sound." *Id.* ⌶ 14. He "felt like a limp blob of mass" with "no muscular control." *Id.* Mr. Williams also had an injured wrist from an unrelated event prior to the arrest and when Sergeant Baskett grabbed Mr. Williams after applying the taser, Mr. William states "[t]he pain shocked [him] back into [his] ability to speak and [he] cried out in pain." *Id.* ⌶ 16. This all amounts to non-lethal force. *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010) ("tasers and stun guns fall into the category of non-lethal

force."). Still, these uses of force are significant and can intrude on Mr. Williams's Fourth Amendment interests.

### B.    Governmental Interests

Next, I must balance Mr. Williams's Fourth Amendment interests against the asserted governmental interests. *Marquez*, 693 F.3d at 1174. Sergeant Baskett maintains that the use of force was justified by Mr. Williams's caution warrant and the information that Mr. Williams was commonly in possession of a firearm and was highly likely to attempt to elude police.[3]

Viewing the facts in the light most favorable to Mr. Williams, I find it was reasonable for Sergeant Baskett to believe that Mr. Williams presented a threat to his safety. Ordinarily, the fact that Mr. Williams's arrest warrant was for the non-violent crimes of forgery and theft would cut against a safety risk to the officers and the use of force during an arrest. But I find that the other information known by Sergeant Baskett takes this case out of the ordinary. Sergeant Baskett received information that Mr. Williams was commonly in possession of a handgun painted to look like a toy gun, that it was highly likely he would attempt to elude the police, and that he had a caution warrant from previous arrests for felon in possession of a weapon, resisting arrest, and using or possessing a loaded firearm in a vehicle. Whether or not that information is in fact true is beside the point for resolving the claims before me today; there is no dispute that Sergeant Baskett believed it to be true. It was thus reasonable for Sergeant Baskett to believe Mr. Williams may be armed and potentially violent. It was also reasonable for him to believe Mr.

---

[3] Sergeant Baskett also argues at length that Mr. Williams "understood the reasonableness of [his] actions" and agreed that the use of force was reasonable. Def.'s Mot. Summ. J. [ECF 55] at 8–9. However, it makes no difference that at one time Mr. Williams might have agreed the use of force was reasonable. The test for excessive force cases is objective reasonableness and it is the court's job to assess the constitutionality of an alleged instance of excessive force.

Williams may attempt to resist or evade arrest. *See Graham*, 490 U.S. at 396; *Lombardo*, 141 S. Ct. at 2241.

Sergeant Baskett's stop of Mr. Williams's vehicle was objectively reasonable. It is immaterial whether or not Mr. Williams stopped at the stop sign prior to entering the traffic circle. It is undisputed that Sergeant Baskett knew that there was a warrant for Mr. Williams's arrest and that he spotted a vehicle matching the description of the one Mr. Williams was suspected to be driving. Given what Sergeant Baskett knew about Mr. Williams's potential flight risk, it was reasonable for Sergeant Baskett to stop Mr. Williams by entering the other side of the traffic circle and making contact with Mr. Williams's vehicle.[4]

The smashing of Mr. Williams's window, the two uses of a taser, and the removal of Mr. Williams from his vehicle were also objectively reasonable given Sergeant Baskett's reasonable belief that he needed to have physical control over Mr. Williams because he would likely be armed and attempt to resist and/or evade arrest. These instances of force occurred in rapid succession as Sergeant Baskett reacted to the scene unfolding before him. Considering all the circumstances, Sergeant Baskett responded to a very serious encounter—one that had the potential to become a lethal situation. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (stating the "most important" *Graham* factor is "whether the suspect posed an immediate threat to the safety of the officers or others"). It would be armchair second guessing for me to say that, instead of taking the actions he did, Sergeant Baskett should have taken an alternative, more passive, course of action. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)).

---

[4] At oral argument, counsel for Mr. Williams contended that Sergeant Baskett's initial collision with Mr. Williams's car constituted lethal force. Because the record does not indicate the collision occurred at a high speed, I reject this argument.

In sum, I find all five alleged instances of excessive force—the stop of the vehicle, shattering of Mr. Williams's driver's window, first and second use of the taser, and removal from vehicle—were objectively reasonable given the considerable government interests at stake. Summary judgment in Sergeant Baskett's favor is proper.

**IV. Qualified Immunity**

At oral argument, both sides raised the issue of qualified immunity. Under the doctrine of qualified immunity, government officials are protected from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). A public official is entitled to qualified immunity at the summary judgment stage if "(1) the disputed facts taken in the light most favorable to the party asserting the injury do not show that the official's conduct violated a constitutional right, or (2) the constitutional right was not clearly established at the time the official acted." *Atencio v. Arpaio*, 674 Fed. Appx. 623, 625 (9th Cir. 2016).

In the previous section, I determined that Sergeant Baskett's actions were objectively reasonable and therefore no constitutional violation occurred. However, even if Sergeant Baskett had violated a constitutional right, Mr. Williams has not shown that such a right was clearly established.

"For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). A clearly established constitutional right must be "so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577 (2018)

(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This is a fact-intensive question, particularly in excessive force cases. *Kisela*, 138 S. Ct. at 1153.

Taken in the light most favorable to Mr. Williams, the record indicates that Sergeant Baskett used intermediate force to apprehend a nonviolent criminal suspect who he believed could be in possession of a firearm but who had only engaged in passive resistance. To support his assertion that these actions constitute a clearly established constitutional violation, Mr. Williams cites to *Brown v. Diaz*, No. 2:17-cv-01157-KJM-AC, 2020 WL 4755357 (E.D. Cal., Aug. 17, 2020). In *Diaz*, the court found a police officer violated a clearly established constitutional right by pointing a gun and discharging a taser at a suspect of a minor traffic offense while the suspect did not "pos[e] an apparent threat to officer safety." *Id.* at 10–12. But due to the information Sergeant Baskett had received regarding Mr. Williams—that he was commonly in possession of a handgun, that he was likely to flee arrest, and that he had previously been arrested on related charges—Sergeant Baskett could have reasonably concluded that Mr. Williams did pose a threat to his safety. As such, *Diaz* does not "'squarely govern[]' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).

I therefore find that even if Sergeant Baskett violated a constitutional right—I hold that he did not—such a right was not clearly established. Accordingly, Sergeant Baskett is entitled to qualified immunity.

## CONCLUSION

As discussed above, I GRANT Defendant's Motion for Summary Judgment [ECF 55] and DISMISS with prejudice Plaintiff's Claims One, Two, Three, Four, and Five. Plaintiff's Cross-Motion for Summary Judgment [ECF 81] is DENIED as moot.

IT IS SO ORDERED.

DATED this 30 day of September, 2021.

MICHAEL W. MOSMAN
United States District Judge

12 – OPINION AND ORDER